UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAVID GOULD, et al.,

Defendants.

C16-1041 TSZ

ORDER

THIS MATTER comes before the Court on the United States' motion for summary judgment against David Gould and for default judgment against Brookline Properties, Financial Concepts, Ltd., and Goldstar Enterprises, Inc., docket no. 177.  Also pending before the Court is the United States and Jane Polinder's stipulated motion for entry of judgment against Jane Polinder, docket no. 176.  Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following Order.

**Background**

This case arises out of the efforts of the United States Internal Revenue Service ("IRS") to collect taxes owed by defendants David Gould and Jane Polinder for tax years 2000 through 2004.  The United States now moves for summary judgment against Gould, seeking for its tax liens against Gould to be reduced to judgment and for the Court to

ORDER - 1

order that the tax liens be foreclosed against 6109 Evergreen Way, Ferndale, Washington, 98248 (the "Subject Property").[1]

A.   **David Gould and his Sources of Income**

In September 1991, David Gould purchased property in Whatcom County, Washington (the "Evergreen Way property") with the address of 2450 Thornton Road. 2450 Thornton Rd. Sept. 1991 Deed, Ex. 1 (docket no. 177-13); 2450 Thornton Rd. Sept. 1991 Real Estate Excise Tax, Ex. 2 (docket no. 177-14); Gould Dep. at 27:3−29:1 (docket no. 177-9).  Gould took out a $110,000 loan from U.S. Bank for this purchase. 2450 Thornton Rd. Sept. 1991 Deed of Trust, Ex. 3 (docket no. 177-15).  Through a series of transactions in the mid-1990s, the Evergreen Way property was subdivided into a north parcel and a south parcel, and the north parcel was in turn further subdivided into three lots: 6115 Evergreen Way, 6121 Evergreen Way, and 6125 Evergreen Way. Dec. 1992 Deed, Ex. 4 (docket no. 177-16); Special Power of Attorney, Ex. 5 (docket no. 177-17); Dec. 1994 Deed, Ex. 6 (docket no. 177-18).  In 2005, the south parcel was also split into three lots – 6109 Evergreen Way, 6103 Evergreen Way, and 2450 Thornton Road – as shown in the following image:

---

[1] 6109 Evergreen Way, Ferndale, Washington, 98248 is more particularly described as:

Lot 1, as delineated on Baycor Short Plat, according to the plat thereof, recorded August 22, 2005, under the Auditor's File No. 2050804879, records of Whatcom County, Washington; situate in Whatcom County, Washington; Assessor's Tax Parcel No. 3902180470220000.

ORDER - 2




Baycor Short Plat, Ex. 43 (docket no. 177-55).

In February 1994, Jane Polinder, along with her parents Gerald and Shirley Polinder, purchased a duplex and adjacent lot located on St. Paul Street, in Bellingham, Washington ("the St. Paul property") for $195,000.  Feb. 1994 Deed, Ex. 7 (docket no. 177-19); 1321 St. Paul Street Assessor History, Ex. 8 (docket no. 177-20); 1327 St. Paul Street Assessor History, Ex. 9 (docket no. 177-21); Polinder Dep. at 90:1−16, (docket no. 177-10).  The St. Paul property was paid for primarily with a $175,500 loan from U.S. Bank.  Feb. 1994 Deed of Trust, Ex. 10 (docket no. 177-22); Polinder Dep. at 90:22−91:12 (docket no. 177-10).

ORDER - 3

1    On April 29, 1995, David Gould married Jane Polinder.  Marriage Certificate,

2  Ex. 11 (docket no. 177-23); Gould Dep. at 75:22–24 (docket no. 177-9); Polinder Dep.

3  at 40:2−5 (docket no. 177-10).  In June 1997, Shirley, Gerald, and Jane Polinder

4  conveyed the St. Paul property to Director of Excalibur "for and in consideration of a

5  mere change in identity."  June 1997 Deed, Ex. 14 (docket no. 177-26); Polinder Dep.

6  92:2−93:16 (docket no. 177-10).  Director of Excalibur was "a private religious

7  corporation sole" created by Gould in 1996, with himself serving as director and Gerald

8  Polinder as secretary.  Director of Excalibur Articles of Incorporation at 4, Ex. 13 (docket

9  no. 177-25); Gould Dep. 46:6−20 (docket no. 177-9).  The Director of Excalibur's

10  Articles of Incorporation noted that "IT IS UNLAWFUL FOR THE CHURCH OF THIS

11  CHARTER TO BE INCORPORATED UNDER THE LAWS OF ANY SECULAR

12  STATE ON EARTH" and that the Director of Excalibur would be doing business as

13  "Baycor Development."  Director of Excalibur Articles of Incorporation at 1, Ex. 13

14  (docket no. 177-25).  When this transfer happened, Gould and Jane Polinder were living

15  in one of the St. Paul duplex units and renting out the other.  Polinder Dep. at 94:9−22,

16  101:9–12 (docket no. 177-10).  And, notwithstanding the transfer from the Polinders to

17  Director of Excalibur, the U.S. Bank mortgage for the St. Paul property remained in the

18  Polinders' names.  *See* Mar. 2003 Deed of Reconveyance, Ex. 15 (docket no. 177-27).

19    In approximately May of 1998, Gould set up the entity Brookline Properties as a

20  "Common Law Unincorporated Business Organization" with Patrick Shannon, one of

21  Gould's business associates, serving as "THE GENERAL TRUST MANAGER of

22  BROOKLINE PROPETIES [sic]."  "Of Brookline Propeties [sic]," Ex. 17 (docket

23  ORDER - 4

no. 177-29); Gould Dep. 18:1−21:9 (docket no 177-9); Shannon Dep. 26:18−30:25 (docket no. 177-12).  On the same day that Brookline Properties was formed Gould quitclaimed to it the Evergreen Way property "for and in consideration of CAPITAL UNITY OF INDETERMINABLE VALUE."  May 1998 Deed at 1, Ex. 18 (docket no. 177-30).  The U.S. Bank mortgage, however, remained in Gould's name.  *See* Aug. 1998 Corp. Assignment, Ex. 19 (docket no. 177-31); PNC Evergreen Way Loan History, Ex. 20 (docket no. 177-32).

In 2000, Gould and Polinder moved to Costa Rica.  Polinder Dep. 24:17−20 (docket no. 177-10); Gould Dep. 95:16−23, 113:24−114:1 (docket no. 177-9).  While in Costa Rica, Gould and Polinder rented out the properties they owned, including 1323 St. Paul Street and the Evergreen Way property.  2000-2004 Itemized Deposits, Ex. 21 (docket no. 177-33); Polinder Dep. at 88:22−89:16 (docket no. 177-10); Gould Dep. at 64:9−15 (docket no. 177-9).  The rental income was deposited in the Director of Excalibur/Baycor Development's account with U.S. Bank, 2000-2004 Itemized Deposits, Ex. 21 (docket no. 177-33), over which Gould had signature authority, *see* U.S. Bank Check, Ex. 22 (docket no. 177-34).

The rental income was not Gould's only source of income from 2000 to 2004.  For example, Gould derived income from an interest accruing Salomon Smith Barney bank account opened by Polinder with Gould's mother, Lorraine Blizzard, in 2001.  *See* Salomon Smith Barney Account Application, Ex. 23 (docket no. 177-35); Polinder Dep. at 114:5−18 (docket no. 177-10).  Polinder opened another interest accruing account with a Costa Rican bank, Banco Cuscatlán, in 2003, from which Gould derived income.  *See*

ORDER - 5

Banco Cuscatlán Account Statement, Ex. 27 (docket no. 177-39); Gould Dep. at 65:3−6,

119:8−24 (docket no. 177-9); Polinder Dep. at 26:6−18, 113:17−18 (docket no. 177-10).

In 2002, Gould derived income from $5,838.39 in credit card debt charged off by

Polinder.  *See* First USA Visa Account Statement, Ex. 24 (docket no. 177-36); Capital

One MasterCard Application Information Sheet, Ex. 25 (docket no. 177-37).  And in

2003 and 2004, Gould derived income from the sale of the following properties:

- 1323 St. Paul Street, sold in February 2003 for $188,500, Feb. 2003 Deed, Ex. 29 (docket no. 177-41),

- 6121 Evergreen Way, sold in March 2003 for $42,500, 6121 Evergreen Way Deed, Ex. 32 (docket no. 177-44); Settlement Statement, Ex. 33 (docket no. 177-45); Substitute Form 1099S, Ex. 34 (docket no. 177-46),

- 6125 Evergreen Way, sold in March 2003 for $42,500, 6125 Evergreen Way Assessor History, Ex. 30 (docket no. 177-42); 6125 Evergreen Way Deed, Ex. 31 (docket no. 177-43); Settlement Statement, Ex. 33 (docket no. 177-45); Substitute Form 1099S, Ex. 34 (docket no. 177-46),

- 6115 Evergreen Way, sold in March 2003 for $55,000, 6115 Evergreen Way Deed, Ex. 36 (docket no. 177-48); 6115 Evergreen Way Assessor History, Ex. 37 (docket no. 177-49),

- 15 Sigma Circle, Bellingham, WA, sold in November 2004 for $12,368.30, Sigma Circle Balance Sheet, Ex. 40 (docket no. 177-52).

Gould used the proceeds from the sales of 6121 and 6125 Evergreen Way to pay off the

mortgage, that was still in his name, on the Evergreen Way property.  *See* Settlement

Statement, Ex. 33 (docket no. 177-45); Evergreen Way Loan Payoff, Ex. 35 (docket no.

177-47).  The proceeds from the sale of 6115 Evergreen Way were deposited into an

account owned by Director of Excalibur.  *See* 2003 Property Sales Checks, Ex. 38

(docket no. 177-50); U.S. Bank Statements, Ex. 39 (docket no. 177-51).  Director of

ORDER - 6

1   Excalibur, less than a month after that $55,000 deposit, made two transfers totaling

2   $55,000 to Polinder's Banco Cuscatlán account.  *See id.*; Banco Cuscatlán Statement,

3   Ex. 27 (docket no. 177-39); Gould Dep. 69:18−70:8 (docket no. 177-9).  Finally, Gould

4   derived income from the salary he received from his employer.  *See* Peoples Bank

5   Personal Statement, Ex. 26 (docket no. 177-38); Gould Dep. at 54:14–56:8 (docket

6   no. 177-9).  Despite his many sources of income for 2000 through 2004, Gould did not

7   timely file tax returns for those years.  Gould Dep. at 44:3−13 (docket no. 177-9).

8          Gould and Polinder returned from Costa Rica in 2003 and began living in a house

9   on the southern half of the Evergreen Way property.  Gould Dep. at 33:10−25 (docket no.

10  177-9); Polinder Dep. 24:17−25:4 (docket no. 177-10).  Although the Evergreen Way

11  property was titled to Brookline Properties at this time, Gould paid for utilities and other

12  expenses for the property using a Director of Excalibur account.  *See* Verizon Check,

13  Ex. 41 (docket no. 177-53); Checks Written from 2000−2004, Ex. 42 (docket no. 177-

14  54).  After the south lot of the Evergreen Way property was divided in 2005, *see* Baycor

15  Short Plat, Ex. 43 (docket no. 177-55), Gould and Polinder continued to reside on the

16  6109 Evergreen Way lot, *see* Gould Dep. at 33:21−34:10 (docket no. 177-9); Polinder

17  Dep. at 24:23 –25:4 (docket no. 177-10).  The other two lots, 6103 Evergreen Way and

18  2450 Thornton Road, were deeded to Goldstar Enterprises, Inc., a construction company,

19  in 2006.[2]  Mar. 2006 Deed, Ex. 44 (docket no. 177-56).

20

21  [2] Because the transfer of the south lot of the Evergreen Way property from Gould to Brookline Properties
    was fraudulent, *see infra*, the Baycor Plat subdivision of the south parcel of the Evergreen Way property
22  and the subsequent transfer of 6103 Evergreen Way and 2450 Thornton Road from Brookline Properties

23  ORDER - 7

1    Gould only resided at the Subject Property until 2011.  That year, Polinder

2  obtained a protective order against Gould, Polinder Dep. at 64:13–65:17 (docket no. 177-

3  10), and filed for divorce, *id.* at 65:22−66:10; Gould Dep. at 34:3−12 (docket no. 177-9).

4  In the divorce proceedings, the state court found Gould and Polinder's marriage to be

5  valid and awarded Polinder child support.[3]  *See* Final Order, *In re Marriage Polinder &*

6  *Gould*, No. 11-3-00145-8 (Wash. Super. Ct. Feb. 24, 2014), Ex. 58 (docket no. 177-70).

7  Gould and Polinder's marriage was formally dissolved by the state court on February 24,

8  2014.  *See* Decree of Dissolution, *In re Marriage of Polinder & Gould*, No. 11-3-00145-8

9  (Wash. Super. Ct. Feb. 24, 2014), Ex. 60 (docket no. 177-72).

10    Once Polinder obtained the protective order, Gould moved out of the Subject

11  Property.  *See* Gould Dep. at 34:3−12 (docket no. 177-9).  Polinder, however, remained at

12  the property along with her and Gould's children.  Polinder was supposedly renting the

13  Subject Property from Brookline Properties but has never written a check for rent to

14  Brookline Properties.  *See* Decree of Dissolution at USA01566, *In re Marriage of*

15

16  _____

17  to Goldstar Enterprises, Inc. are both invalid.  The Court, however, takes judicial notice of a deed
   indicating that both 6103 Evergreen Way and 2450 Thornton Road were subsequently sold for value to
   third parties who are not joined or named as defendants in this case.  *See* Statutory Warranty Deed,
18  recorded in Whatcom County, WA on June 30, 2006, at Auditor's File No. 2060605427; *see also* Fed. R.
   Evid. 201(b)(2); *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1263–64 (C.D. Cal. 2010)
19  (collecting cases noting that courts may take judicial notice of documents recorded with a county
   recorder's office).  Additionally, the United States has not sought any relief in relation to 6103 Evergreen
20  Way and 2450 Thornton Road.  *See* Am. Compl. (docket no. 40); Mot. (docket no. 177).  Accordingly,
   nothing in this Order shall be construed to affect any interests held by Goldstar Enterprises, Inc. in 6103
21  Evergreen Way and 2450 Thornton Road, or subsequent bona fide purchasers of those properties.

   [3] Gould failed to pay this child support and the State of Washington Department of Social and Health
22  Services ("DSHS") recorded a lien against Gould for past-due child support.  *See* DSHS Lien, Ex. 59
   (docket no. 177-71).

23  ORDER - 8

*Polinder & Gould*, No. 11-3-00145-8 (Wash. Super. Ct. Feb. 24, 2014), Ex. 60 (docket no. 177-72); Polinder Dep. at 68:12–69:11 (docket no. 177-10).  Additionally, as of February 2017, Gould remained on the property's gas bill alongside Polinder, Utility Bills at JP00270, Ex. 61 (docket no. 177-73), and the remaining utility bills were only in Polinder's name, *id.* at JP00271–78.

**B.      The IRS's Efforts to Collect Taxes Owed by Gould**

Gould's failure to file tax returns did not go unnoticed and, in January 2004, Gould was contacted by the IRS about his missing returns.  Jan. 2004 IRS Letter, Ex. 45 (docket no. 177-57).  Gould responded that he was not subject to federal tax laws.  *See* Jan. 2004 Gould Letter at USA10035, Ex. 46 (docket no. 177-58).  On August 13, 2004, the IRS served a summons on Gould seeking documents related to his income from 2000 through 2004.  IRS Summons, Ex. 47 (docket no. 177-59).  No documents were produced by Gould and the United States was forced to obtain an enforcement order.  *See* Order, *United States v. Gould*, No. 2:06-cv-00032 (W.D. Wash. Mar. 6, 2006), Ex. 48 (docket no. 177-60).

Subsequently, Gould and Polinder were questioned by IRS Revenue Agent Evelyn Stone on April 26, 2006.  *See* Sworn Statement, Ex. 49 (docket no. 177-61).  Gould, as well as Polinder, invoked their Fifth Amendment right against self-incrimination in response to most of Agent Stone's questions, *see id.* at 8–107, forcing Agent Stone to rely on public records and third-party documents to reconstruct the couple's community income.

ORDER - 9

1    Stone determined Gould's income was: $23,499,00 for 2000, $12,906.00 for 2001,

2  $46,836.00 for 2002, $226,261.00 for 2003, and $16,554.00.00 for 2004.  Notice of

3  Deficiency at USA00357, Ex. B (docket no. 177-3).  Gould's income tax deficiencies,

4  after applicable deductions and credits, were: $8,089.00 for 2000, $4,281.00 for 2001,

5  $22,487.00 for 2002, $44,112.40 for 2003, and $7,608.00 for 2004, for a total tax

6  deficiency of $86,577.40.  *Id.*  Stone also determined that Gould was liable for statutory

7  penalties under 26 U.S.C. §§ 6651(a)(1), 6651(a)(2), and 6654 and interest.  Notice of

8  Deficiency at USA00357, Ex. B (docket no. 177-3).  The IRS, on September 22, 2008,

9  issued a Notice of Deficiency to Gould for his federal income tax liabilities for 2000

10  through 2004.  Notice of Deficiency at USA00351, Ex. B (docket no. 177-3); Davis Decl.

11  at ¶ 7 (docket no. 177-1).  Gould responded with a 41-page-letter disputing the Notice but

12  took no other actions in response to the Notice.  *See* Oct. 2008 Gould Letter, Ex. 50

13  (docket no. 177-62).

14    Based on the Notice of Deficiency, on February 16, 2009, the IRS assessed

15  Gould's tax liabilities for 2000 through 2004.  Davis Decl. at ¶ 8 (docket no. 177-1);

16  Forms 4340, Ex. 53 (docket no. 177-65).  Gould was informed on September 1, 2009,

17  that the IRS had filed a Notice of Federal Tax Lien ("NFTL") and that he had the right to

18  request a Collection Due Process ("CDP") hearing.  NFTL Letter, Ex. 54 (docket

19  no. 177-66); Gould NFTL, Ex. C (docket no. 177-4); Davis Decl. at ¶ 9 (docket no. 177-

20  1).  Gould requested such a hearing, Gould CDP Hearing Requests, Ex. 55 (docket no.

21  177-67), but his request was denied by the IRS as frivolous, Dec. 2009 IRS Letter, Ex. 56

22  (docket no. 177-68).  Gould never amended his CDP hearing request, and the IRS

23  ORDER - 10

1   disregarded it under 26 U.S.C. § 6330(g).  Jan. 2010 IRS Letter, Ex. 57 (docket no. 177-

2   69).  On April 18, 2013, the IRS recorded an NFTL against Brookline Properties as

3   Gould's nominee for his tax liabilities for 2000 through 2004.  Nominee NFTL, Ex. D

4   (docket no. 177-5).  The IRS refiled both the NFTLs against Gould and against Brookline

5   Properties as Gould's nominee on April 10, 2018.  Refiled NFTLs, Ex. E (docket

6   no. 177-6).

7         This case was first filed on July 6, 2016.  Compl. (docket no. 1).  More than a year

8   later, Gould filed Forms 1040 for tax years 2000-2004.  Late Filed 1040s, Ex. 62 (177-

9   74).  These returns, which were generated at least thirteen years after the relevant tax

10   years and more than eight years after the United States first assessed taxes for those years

11   against Gould, were prepared by Gould's accountant based solely on a two-page email he

12   received from Gould and Gould's estimates of his income for those years.  Sept. 2017

13   Gould Email, Ex. 63 (docket no. 177-75); Burris Dep. at 23:6−26:2, 40:10−42:9,

14   44:12−53:15 (docket no. 177-11).

15         The United States amended its complaint and, pursuant to 26 U.S.C. § 7403(b),

16   named Brookline Properties, the Whatcom County Treasurer, DSHS, Financial Concepts,

17   and Goldstar Enterprises as defendants because they might claim an interest in the

18   Subject Property.  Because Brookline Properties, Financial Concepts, and Goldstar

19   Enterprises failed to appear after numerous attempts by the United States to serve them,

20   the Court entered default against those entities.  Minute Order (docket no. 113); *see also*

21   Mot. for Default (docket no. 109).  The United States has stipulated as to lien priority

22

23   ORDER - 11

1    with the remaining third parties: the Whatcom County Treasurer and DSHS. *See* Order

2    (docket no. 25); Order (docket no. 129).

3        In its amended complaint, the United States originally sought to collect

4    $212,243.94, as of June 30, 2015, plus interest and other statutory additions, for Gould's

5    unpaid federal tax liabilities. Am. Compl. at 10 (docket no. 40). Based on evidence

6    obtained during discovery, the United States recalculated the amount of taxes owed by

7    Gould. *See* Beard Decl. at ¶¶ 3−4 (docket no. 177-7); Form 4549A, Ex. F (docket

8    no. 177-8). Gould's recalculated tax liability was reduced to $56,610 from his original

9    tax liability of $86,577.40. *Compare* Form 4549A, Ex. F (docket no. 177-8), *with* Notice

10   of Deficiency USA00351, Ex. B (docket no. 177-3). Based on Gould's recalculated tax

11   liability, and inclusive of penalties computed through February 14, 2024, and interest

12   computed to March 15, 2024, the United States now seeks to collect $212,109.93 from

13   Gould for his unpaid 2000 through 2004 income taxes. Beard Decl. at ¶¶ 17−21 (docket

14   no. 177-7).

15   **Discussion**

16   **A.    Motion for Default Judgment Against Defendants Brookline Properties,
             Financial Concepts, Ltd., and Goldstar Enterprises, Inc.**

17
18       The United States moves for the entry of default judgment against Defendants

19   Brookline Properties, Financial Concepts, Ltd., and Goldstar Enterprises, Inc. The Court

20   previously entered default against Brookline Properties, Financial Concepts, Ltd., and

21   Goldstar Enterprises, Inc., Minute Order (docket no. 113), and, therefore, has authority to

22   enter default judgment against those entities pursuant to Federal Rule of Civil

23   ORDER - 12

Procedure 55.  Accordingly, the United States' motion for entry of default judgment against Brookline Properties, Financial Concepts, Ltd., and Goldstar Enterprises, Inc. is GRANTED.  As a result of default judgment being granted against these entities:

- any interest held by Brookline Properties in the Subject Property, more properly described as:

> Lot 1, as delineated on Baycor Short Plat, according to the plat thereof, recorded August 22, 2005, under the Auditor's File No. 2050804879, records of Whatcom County, Washington; situate in Whatcom County, Washington; Assessor's Tax Parcel No. 3902180470220000

is hereby extinguished;

- Financial Concepts, Ltd.'s "Affidavit and Memorandum of Security Agreement" and "Affidavit of Obligation," *see* Ex. 51 (docket no. 177-63), recorded on May 1, 2009, against:

> Lot 1 BAYCOR SHORT PLAT AS RECORDED UNDER AUDITOR'S FILE NUMBER 2050804879 MORE COMMONLY KNOWN AS 6109 EVERGREEN WAY, FERNDALE, WASHINGTON 98248

and recorded at Auditor's File Number 2090500044 (Affidavit and Memorandum of Security Agreement") and Auditor's File Number 2090500045 ("Affidavit of Obligation") are hereby declared void and unenforceable;

- any interest held by Goldstar Enterprises, Inc. in the Subject Property, more properly described as:

> Lot 1, as delineated on Baycor Short Plat, according to the plat thereof, recorded August 22, 2005, under the Auditor's File No. 2050804879, records of Whatcom County,

Washington; situate in Whatcom County, Washington;
Assessor's Tax Parcel No. 3902180470220000

is hereby extinguished.[4]

**B.      Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists
and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
The moving party bears the initial burden of demonstrating the absence of a genuine issue
of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if
it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the
adverse party must present affirmative evidence, which "is to be believed" and from
which all "justifiable inferences" are to be favorably drawn.  *Id.* at 255, 257.  When the
record, however, taken as a whole, could not lead a rational trier of fact to find for the
non-moving party, summary judgment is warranted.  *See Beard v. Banks*, 548 U.S. 521,
529 (2006) ("Rule 56(c) 'mandates the entry of summary judgment, after adequate time
for discovery and upon motion, against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's case, and on which that
party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

---

[4] Nothing in this Order affects any interests held by Goldstar Enterprises, Inc. or its successors or assigns
in 6103 Evergreen Way and 2450 Thornton Road.  *See supra* n.2.

ORDER - 14

1   **C.**     <u>**Judgment Against Gould for his Tax Liabilities**</u>

2         The Court is empowered to reduce outstanding federal tax liabilities to judgment

3   "as may be necessary or appropriate for the enforcement of the internal revenue laws."

4   26 U.S.C. § 7402(a).  In such an enforcement action, the United States bears the initial

5   burden of proof. *Palmer v. I.R.S.*, 116 F.3d 1309, 1312 (9th Cir. 1997).  This burden of

6   proof can be met merely by the introduction of an assessment of tax due because such an

7   assessment is generally entitled to a presumption of correctness. *United States v.*

8   *Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983) (citations omitted).  For cases involving

9   unreported income, the presumption of correctness arises so long as the assessment of tax

10  due "is supported by a minimal evidentiary foundation." *Id.* (citation omitted); *United*

11  *States v. Kraus*, C16-5449, 2018 WL 1610225, at *4 (W.D. Wash. Apr. 3, 2018).  If the

12  assessment is supported by a minimal evidentiary foundation, the taxpayer can rebut the

13  presumption of correctness by showing by a preponderance of the evidence that the

14  assessment was arbitrary or erroneous. *Stonehill*, 702 F.2d at 1294; *Keogh v. Comm'r*,

15  713 F.2d 496, 501 (9th Cir. 1983); *Kraus*, 2018 WL 1610225, at *4.

16        The United States has supported its assessment of tax due with the requisite

17  evidentiary foundation and Gould has failed to introduce evidence sufficient to rebut the

18  resulting presumption of correctness.  A presumption of correctness arises because the

19  United States has submitted Forms 4340 showing the dates and the amounts of

20  assessments against Gould for 2000 through 2004, as well as the Notice of Deficiency for

21  these assessments. *See* Forms 4340, Ex. 53 (docket no. 177-65); Notice of Deficiency,

22  Ex. B (docket no. 177-3).  These assessments were based on bank and credit card records,

23  ORDER - 15

1   which the United States has submitted to the Court.  *See* Substitute Returns at

2   USA09655–63, USA09669, Ex. A (docket no. 177-2); Salomon Smith Barney Account

3   Application at USA06162, Ex. 23 (docket no. 177-35); First USA Visa Account

4   Statement, Ex. 24 (docket no. 177-36); Capital One MasterCard Application Information

5   Sheet, Ex. 25 (docket no. 177-37), Banco Cuscatlán Account Statement, Ex. 27 (docket

6   no. 177-39).  As to the sales of the property, any capital gains were determined based on

7   records from the County Assessor's office.  Some of the mortgage interest deductions

8   allowed to Gould in the recalculation of his tax liability were based on statistical analysis.

9   *See* Beard Decl. at ¶ 7 (docket no. 177-7).  Such analysis, however, is appropriate

10  evidence when, as here, incomplete records are provided to the IRS.  *See Palmer*,

11  116 F.3d at 1312.  And to the extent that the United States determined Polinder and

12  Gould's income on a community property basis, half of that income is properly attributed

13  to Gould under Washington's community property law.  *See* RCW 26.16.030.

14          In an attempt to rebut the United States' evidence, Gould has filed a 12-page

15  declaration.  *See* docket no. 180-1.  At best, Gould's declaration is conclusory and self-

16  serving, doing nothing more than identifying facts that Gould "objects" to or "disputes,"

17  but offering no new facts to support Gould's positions.  "A conclusory, self-serving

18  affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a

19  genuine issue of material fact."  *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168,

20  1171 (9th Cir. 1997) (citations omitted).  At worst, Gould's declaration is directly

21  contradicted by other evidence in the record.  For example, Gould states in his declaration

22  that he and Polinder were never married, *see* Gould Decl. at ¶¶ 10, 17 (docket no. 180-1),

23  ORDER - 16

despite his representations to the contrary during his oral examination before the IRS and during his deposition, *see infra*.  Similarly, in his declaration, Gould stated "that during the years 2000 to 2004 [he] did not receive any salary whatsoever, whether paid or deferred," docket no. 180-1 at ¶¶ 15, 17, yet at his deposition he testified to receiving an "income" from "an overseas company" while he was in Costa Rica from 2000 through 2003, Gould Dep. at 54:14–56:8 (docket no. 177-9).  Further contradicting his declaration, on April 25, 2002, Gould signed a personal statement for Peoples Bank identifying Analistude Capital as his employer and his salary as $75,000.  Peoples Bank Personal Statement, Ex. 26 (docket no. 177-38).  Gould also admitted to working for Analistude Capital during his time in Costa Rica.  Gould Dep. at 58:18−59:23 (docket no. 177-9).  Gould "cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Kennedy v. Allied Mut. Ins.*, 952 F.2d 262, 266 (9th Cir. 1991) (citations omitted).  Simply put, Gould has not put forth facts sufficient to show by a preponderance of the evidence that the United States' assessment of tax due was arbitrary or erroneous.

    In addition to his conclusory declaration, Gould offers numerous legal arguments for why the United States' tax calculations should be disregarded.  None of Gould's arguments are persuasive.  Gould first argues that the United States' calculations should be disregarded because he was never legally married to Jane Polinder and, therefore, he cannot be responsible for any taxes arising from community property.  Gould, however, is precluded from arguing that his marriage to Polinder was invalid.  The validity of Gould's marriage to Polinder has previously been adjudicated by a Washington state

1  court, which held that Gould and Polinder's marriage was valid.  *See* Final Order, *In re*

2  *Marriage of Polinder & Gould*, No. 11-3-00145-8 (Wash. Super. Ct. Feb. 24, 2014), Ex.

3  58 (docket no. 177-70).  This result accords with Washington's recognition of marriages

4  as valid even absent a marriage license so long as the traditional solemnities of marriage

5  are observed.  *See State v. Denton*, 97 Wn. App. 267, 270–73, 983 P.2d 693 (1999)

6  (concluding that the marriage of a couple who "not only lived together and held

7  themselves out as husband and wife for years, [but also] formally began their marriage

8  relationship with a religious ceremony in which they promised to take each other to be

9  husband and wife" was valid, and noting that there is "no authority for declaring a

10  marriage to be valid for some purposes but not for others").  Moreover, Gould

11  represented that he was married to Polinder both during his oral examination before the

12  IRS, Sworn Statement at 16:10–18, Ex. 49 (docket no. 177-61), and during his deposition

13  in relation to this case, Gould Dep. at 17:13–18; 75:22–24, 109:21–110:25 (docket

14  no. 177-9).  Indeed, Gould testified that, although he and Polinder signed a certificate of

15  marriage, they did not obtain a marriage license from the state of Washington "[b]ecause

16  [they] didn't want the state to be a third party to [their] marriage."  *Id.* at 102:16–103:6.

17  Gould will not be allowed to recant these multiple statements made under oath at such a

18  late date in this litigation.  The United States properly included taxes on community

19  property in its calculations of Gould's tax liabilities.

20       Gould next argues that the United States improperly attributed to him the income

21  of Director of Excalibur.  The thrust of Gould's argument is that the United States failed

22  to respect Direct of Excalibur's separate corporate identity.  The United States Court of

23  ORDER - 18

Appeals for the Ninth Circuit has rejected a similar argument premised on similar facts to this case. *See Gardner v. Comm'r*, 845 F.3d 971 (9th Cir. 2017).

In *Gardner*, the taxpayer-appellants, Elizabeth and Fredric Gardner, operated Bethel Aram Ministries ("BAM"), "'an unincorporated association in Arizona organized to be an 'ecclesiastical church ministry,''" with Elizabeth Gardner being BAM's registered corporation sole. *Id.* at 972–73. The taxpayer-appellants had "signed vows of poverty declaring their intent to divest themselves from earnings or wages from BAM and stating that BAM would provide for their needs as pastors of the church ministry," and subsequently transferred all of their assets, including title to their home, to BAM. *Id.* at 973. BAM had no congregation from 2002–2004, the tax years at issue. *Id.* Instead, "the Gardners traveled across the country offering their services in setting up corporations sole and limited liability companies" for a "donation" to BAM. *Id.* After the Gardners failed to file their 2002 through 2004 tax returns, and refused to cooperate in an IRS audit, the IRS assessed their tax liabilities based on an analysis of BAM's bank records. *Id.* at 974. On appeal, the Gardners did not deny that they exercised complete dominion and control over BAM and its financial accounts, but did argue that they should not be liable for taxes because BAM was a separate entity. *Id.* at 976. Rejecting this argument, the Ninth Circuit concluded that "as long as the Gardners have complete control over the funds, it makes no practical difference whether the funds are titled in their names or in BAM's." *Id.* at 977 (citations omitted).

Just as the Gardners exercised complete control over BAM's funds, so too did Gould exercise complete control over Director of Excalibur's funds. Gould had signatory

ORDER - 19

1    authority over Director of Excalibur's bank accounts.  *See* U.S. Bank Check, Ex. 22

2    (docket no. 177-34); Peoples Bank New Account Information, Ex. 28 (docket no. 177-

3    40).  Those accounts were used by Gould to pay expenses for the Evergreen Way

4    properties in Brookline Properties' name, as well as the mortgage on those properties in

5    his own name.  *See* PNC Evergreen Way Loan History, Ex. 20 (docket no. 177-32);

6    Checks Written from 2000−2004 at USA04842−44, Ex. 42 (docket no. 177-54).

7    Additionally, Gould deposited funds in Director of Excalibur accounts that were not

8    properly its due, *i.e.*, funds related to the Evergreen Way properties and personal gifts.

9    Itemized Deposits at USA07882, USA07884, USA07893 ("memo: 'Happy

10   Anniversary'"), USA07894, Ex. 21 (docket no. 177-33).  It is also undisputed that the

11   sale proceeds for 1323 St. Paul Street, titled in Director of Excalibur's name, were almost

12   immediately after deposit transferred from Director of Excalibur's bank account to

13   Polinder's Banco Cuscatlán account.  Gould Dep. 69:11−70:8 (docket no. 177-9).

14   Indeed, Gould claimed income from the 1323 St. Paul Street sale on his late-filed returns.

15   Late Filed 1040s, Ex. 62 (docket no. 177-74 at 41).

16       To the extent Gould objects to items of income from the Evergreen Way

17   properties titled in Brookline Properties' name, this objection similarly fails.  Gould

18   claimed income from these properties on his late-filed tax returns.  *Id.* at 6, 16, 26, 38, 49.

19   And the proceeds from the sale of 6121 and 6125 Evergreen Way were deposited into

20   Director of Excalibur's account and then nearly immediately transferred to Polinder's

21   Banco Cuscatlán account.  Settlement Statement at USA08966 (March 20, 2003,

22   disbursement), Ex. 33 (docket no. 177-45); 2003 Property Sales Checks at USA09442

23   ORDER - 20

1    (March 20, 2003, deposit), USA04855 (March 28, 2003, check to Polinder), Ex. 38

2    (docket no. 177-50).  Moreover, Brookline Properties functioned as the nominee or alter

3    ego of Gould.  *See infra* n.6.  Indeed, Patrick Shannon, nominal trustee of Brookline

4    Properties, testified that all decisions about the Subject Property "had to go through

5    David [Gould] and David's the one that called the final ball."  Shannon Dep. at 52:6-11

6    (docket no. 177-12).  Because Gould exercised complete control over both Director of

7    Excalibur's and Brookline Properties' income, the United States validly attributes that

8    income to Gould.

9         Gould's final argument is that his late-filed returns supersede the United States'

10   assessments, making the United States' assessments arbitrary.  Gould advanced this

11   argument in support of his motion for summary judgment.[5]  *See* Mot. at 2–3 (docket

12   no. 67).  The Court previously rejected this argument, *see* Minute Order (docket no. 82),

13   and declines to re-adjudicate the issue.

14   **D.**   **The Federal Tax Liens are Foreclosable Against the Subject Property**

15        The United States' tax liens are foreclosable against the Subject Property so long

16   as Gould has a valid state law property interest in the property.  *See United States v.*

17   *Craft*, 535 U.S. 274, 283 (2002) (noting that 26 U.S.C. § 6321 is intended to "reach every

18   interest in property that a taxpayer might have"); *United States v. Nat'l Bank of Com.*,

19

20   [5] In his response to the United States' motion for summary judgment, Gould cites *Davis v. United States*,
     230 F.3d 1383, 2000 WL 194111 (Fed. Cir. Feb. 16, 2000), a case which he did not cite in his motion for
21   summary judgment, *see* Mot. (docket no. 67).  *Davis* does not help Gould.  The *Davis* court analyzed
     when a tax return is considered received by the IRS.  *See Davis*, 2000 WL 194111, at *2–3.  *Davis* does
22   not, however, discuss whether late filed tax returns supersede tax assessments determined by the IRS
     pursuant 26 U.S.C. § 6020, and is not relevant to this case.

23   ORDER - 21

472 U.S. 713, 722–23 (1985) (discussing how state law defines property interests and federal law defines federal tax consequences on those property interests). The United States argues that Gould has a property interest in the Subject Property, and therefore that the outstanding tax liens are foreclosable against the property, because Brookline Properties is an alter ego of Gould, because Brookline Properties holds the property as a nominee for Gould, and/or because the transfer of the property to Brookline Properties was fraudulent. Gould challenges only the United States' fraudulent transfer theory, asserting two arguments for why the United States cannot prove the transfer was fraudulent:[6] (1) this case was brought outside the Washington Uniform Fraudulent Transfer Act's[7] statute of limitations, and (2) his declaration establishes that he lacked fraudulent intent. Neither argument has merit.

Gould previously raised the statute of limitations argument in his motion to dismiss, docket nos. 28 & 30, and his motion for reconsideration, docket nos. 49 & 49-1. The Court rejected this argument in relation to both of Gould's motions, *see* Minute Order (docket no. 36); Minute Order (docket no. 50), and does so again for the reasons previously articulated.

---

[6] Gould challenges the United States' theory that he has an interest in the Subject Property because the 1998 transfer was fraudulent. Gould does not, however, raise any challenge to the United States' nominee or alter ego theories. The Court finds that, in the alternative to the 1998 transfer being fraudulent, Gould has a foreclosable interest in the Subject Property because, for the reasons outlined in the United States' motion, *see* docket no. 177 at 16–18, Brookline Properties was Gould's nominee or alter ego.

[7] Gould refers to the Uniform Voidable Transactions Act, but that Act applies only to transfers after July 23, 2017. RCW 19.40.905; *see also United States v. Weathers*, 532 F. Supp. 3d 1030, 1047 n.8. (W.D. Wash. 2021).

ORDER - 22

1    Under Washington law, a transfer made prior to 2017 and "with actual intent to

2    hinder, delay, or defraud any creditor of the debtor" may be set aside as fraudulent,

3    RCW 19.40.041(1)(a), if there is "clear and satisfactory proof" of fraudulent intent,

4    *United States v. Allahyari*, 980 F.3d 684, 692 (9th Cir. 2020).  The United States has

5    presented clear and satisfactory proof that Gould's transfer of the Subject Property to

6    Brookline Properties was done with intent to hinder, delay, or defraud the United States.

7    When determining fraudulent intent, courts should consider the factors outlined in

8    RCW 19.40.041(2), several of which are present with Gould's transfer of the Evergreen

9    Way property to Brookline Properties.  Brookline Properties was controlled by Gould,

10   *see supra*, meaning the transfer of the Subject Property was to an "insider,"

11   RCW 19.40.041(2)(a).  Additionally, Gould retained possession and control of the

12   property after the transfer, RCW 19.40.041(2)(b), because he controlled Brookline

13   Properties, and because the Subject Property was his personal residence and he made all

14   decisions regarding the property.  The transfer was also for inadequate consideration.

15   RCW 19.40.041(2)(h).  Gould contends that the "certificate" he received from Brookline

16   Properties constitutes adequate consideration for the transfer.  Gould admits, however,

17   that the transfer of the property was irrevocable.  Gould Dep. at 32:11–14 (docket

18   no. 177-9).  A nonfungible certificate which cannot be redeemed for the property and

19   cannot be sold to anyone else is just a certificate, *see id.* at 33:8–9, and is not adequate

20   consideration for the transfer of real property.  Further supporting the lack of adequate

21   consideration for the transfer is the fact that Gould remained personally liable for the

22

23   ORDER - 23

1   mortgage after the transfer of his property.  *See* PNC Evergreen Way Loan History, Ex.

2   20 (docket no. 177-32).

3          In attempt to counter the United States' evidence of fraudulent intent, Gould

4   asserts in his declaration that he did not transfer the Subject Property with the intent to

5   hinder, delay, or defraud any creditor.  Gould's self-serving declaration that he did not

6   intend to defraud any creditor does not create a genuine issue of material fact.  *See FTC*,

7   104 F.3d at 1171; *see also In re Wicklund*, No. C15-0817, 2016 WL 5339412, at *7

8   (W.D. Wash. Mar. 28, 2016) (noting that courts have granted summary judgment on

9   intent "when substantial circumstantial evidence of intent is met with only 'self-serving,

10  unsubstantiated statements.'"  (citations omitted)).  The 1998 transfer of the Evergreen

11  Way property to Brookline Properties was fraudulent and, therefore, Gould has a

12  foreclosable property interest in the Subject Property.

13         By virtue of the unpaid federal tax assessments against Gould, the United States

14  has liens against all property and rights to property of David Gould under 26 U.S.C.

15  § 6321.  These liens are valid and attach to the Subject Property.  The United States' tax

16  liens against Gould are foreclosed against the Subject Property, and the Court will

17  appoint a real-estate agent or broker to act as receiver to sell the Subject Property.  The

18  Court retains jurisdiction to enforce the sale of the Subject Property.

19  **E.     Stipulated Motion for Entry of Judgment Against Jane Polinder**

20         Also pending before the Court is the United States and Polinder's stipulated

21  motion, docket no. 176, for entry of judgment against Jane Polinder.  That motion is

22  GRANTED and, pursuant to the stipulated motion, Jane Polinder is liable to the United

23  ORDER - 24

States for federal tax and penalty assessments against her totaling $91,271.06 as of February 14, 2024, plus statutory interest and other statutory additions for tax years 2000, 2001, 2002, 2003, and 2004 accruing from March 15, 2024.  By virtue of the unpaid federal tax assessments against Polinder, the United States has liens against all property and rights to property of Jane Polinder under 26 U.S.C. § 6321.  These liens are valid and attach to the property located at 6109 Evergreen Way, Ferndale, Washington 98248 ("the Subject Property") more particularly described as:

> Lot 1, as delineated on Baycor Short Plat, according to the plat thereof, recorded August 22, 2005, under the Auditor's File No. 2050804879, records of Whatcom County, Washington; situate in Whatcom County, Washington; Assessor's Tax Parcel No. 3902180470220000.

The United States' tax liens against Polinder are foreclosed against the Subject Property and the Court will appoint a real-estate agent or broker to act as receiver to sell the Subject Property.  The Court retains jurisdiction to enforce the settlement agreement between the United States and Polinder.

**<u>Conclusion</u>**

For the foregoing reasons, the Court ORDERS:

(1)     The United States' motion for summary judgment against David Gould and for default judgment against Brookline Properties, Financial Concepts, Ltd., and Goldstar Enterprises, Inc., docket no. 177, is GRANTED.

(2)     The United States is entitled to entry of judgment in its favor and against David Gould in the amount of $212,109.93, plus other statutory additions.

ORDER - 25

1        (3)     The United States and Jane Polinder's stipulated motion for entry of

2 judgment against Jane Polinder in the amount of $91,271.06, plus other statutory

3 additions, docket no. 176, is GRANTED.

4        (4)     As a result of default judgment being granted against Brookline Properties,

5 Financial Concepts, Ltd., and Goldstar Enterprises, Inc.:

6        (a)     any interest held by Brookline Properties in the Subject Property,

7        more properly described as:

8            Lot 1, as delineated on Baycor Short Plat, according to the
           plat thereof, recorded August 22, 2005, under the Auditor's

9            File No. 2050804879, records of Whatcom County,
           Washington; situate in Whatcom County, Washington;

10            Assessor's Tax Parcel No. 3902180470220000

11        is hereby extinguished;

12        (b)     Financial Concepts, Ltd.'s "Affidavit and Memorandum of Security

13        Agreement" and "Affidavit of Obligation," *see* Ex. 51 (docket no.

14        177-63), recorded on May 1, 2009, against:

15            Lot 1 BAYCOR SHORT PLAT AS RECORDED UNDER
           AUDITOR'S FILE NUMBER 2050804879 MORE COMMONLY

16            KNOWN AS 6109 EVERGREEN WAY, FERNDALE,
           WASHINGTON 98248

17        and recorded at Auditor's File Number 2090500044 (Affidavit and

18        Memorandum of Security Agreement") and Auditor's File

19        Number 2090500045 ("Affidavit of Obligation") are hereby void and

20        unenforceable;

21

22

23 ORDER - 26

1
2

    (c)    any interest held by Goldstar Enterprises, Inc. in the Subject Property, more properly described as:

> Lot 1, as delineated on Baycor Short Plat, according to the
> plat thereof, recorded August 22, 2005, under the Auditor's
> File No. 2050804879, records of Whatcom County,
> Washington; situate in Whatcom County, Washington;
> Assessor's Tax Parcel No. 3902180470220000

is hereby extinguished.

    (5)    By virtue of the unpaid federal tax assessments against David Gould and Jane Polinder, the United States has liens against all property and rights to property of David Gould and Jane Polinder under 26 U.S.C. § 6321.  These liens are valid and attach to the property located at 6109 Evergreen Way, Ferndale, Washington 98248 more particularly described as:

> Lot 1, as delineated on Baycor Short Plat, according to the plat thereof,
> recorded August 22, 2005, under the Auditor's File No. 2050804879,
> records of Whatcom County, Washington; situate in Whatcom County,
> Washington; Assessor's Tax Parcel No. 3902180470220000.

The United States' tax liens against David Gould and Jane Polinder are foreclosed against the Subject Property.

    (6)    The parties are ORDERED to submit to the Court, no later than September 9, 2024, a list of three proposed qualified real-estate agents or brokers to act as receiver to sell the Subject Property.  Proceeds from the sale of the Subject Property are to be disbursed as follows:

-   First, to the costs of the sale, including the compensation of the court-appointed receiver.

ORDER - 27

1
2
3

- Second, to the Whatcom County Treasurer for any unpaid property taxes pursuant to the stipulation between the United States and the Whatcom County Treasurer. *See* docket no. 21.

4

- Third, to the United States' federal tax liens against Jane Polinder.

5

- Fourth, to the United States' federal tax liens against David Gould.

6
7

- Fifth, to DSHS's lien for unpaid child support owed to Jane Polinder pursuant to the stipulation between the United States and DSHS. *See* docket no. 126.

8
9
10

- Finally, any funds remaining after the foregoing disbursements have been made shall deposited into the Registry of the Court, upon which the Court will entertain motions concerning the disposition of such funds.

11

The Subject Property shall not be sold before September 30, 2024.

12
13
14

(7)    Attached as Exhibit A to this Order is the Court's proposed order appointing a receiver to sell the Subject Property.  The parties are DIRECTED to file any objections to the Court's proposed receiver order no later than August 16, 2024.

15
16
17

(8)    Attached as Exhibit B to this Order is the Court's proposed judgment.  The parties are DIRECTED to file any objections to the Court's proposed judgment no later than August 16, 2024.

18

(9)    The Clerk is directed to send a copy of this Order to all counsel of record.

19

IT IS SO ORDERED.

20

Dated this 23rd day of July, 2024.

21

22

Thomas S. Zilly
United States District Judge

23

ORDER - 28

# EXHIBIT A

ORDER - 29

1
2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

3

UNITED STATES OF AMERICA,

4

Plaintiff,

C16-1041 TSZ

5

v.

[PROPOSED]
ORDER APPOINTING
RECEIVER

6

DAVID GOULD, et al.,

7

Defendants.

8

9

10

11

THIS MATTER comes before the Court on the United States and Defendant Jane

Polinder's request for the appointment of a receiver to sell the real property located at

6109 Evergreen Way, Ferndale, Washington, 98248 (the "Subject Property").[1]  Pursuant

to 26 U.S.C. § 7402(a), the Court ORDERS that:

12

13

14

15

16

1.      [NAME] of [REALTY AGENCY/BROKERAGE], whose address is

[ADDRESS] is appointed as a receiver[2] ("Receiver") for the Subject Property for the

purpose of effectuating the sale of the Subject Property to satisfy the outstanding federal

tax liens against defendants David Gould and Jane Polinder.  The Receiver shall have the

17

18

[1] 6109 Evergreen Way, Ferndale, Washington, 98248 is more particularly described as:

19

20

Lot 1, as delineated on Baycor Short Plat, according to the plat thereof, recorded August
22, 2005, under the Auditor's File No. 2050804879, records of Whatcom County,
Washington; situate in Whatcom County, Washington; Assessor's Tax Parcel
No. 3902180470220000.

21

22

[2] Because the Receiver is being appointed in a post-judgment context, the standard that governs
appointment of a receiver under Federal Rule of Civil Procedure 66 to protect a party's interest in property
during the pendency of litigation does not apply to this action, nor does the Court need to make a make a
jeopardization finding in this case.  *See United States v. Morgan*, No. 3:18-cv-1647, 2021 WL 3421708,
at *6 n.44 (D. Conn. Aug. 15, 2021) (collecting cases).

23

ORDER - 30

authority to arrange for the sale of the Subject Property through an appropriate purchase agreement, in any manner approved by the United States.[3]

2.      The Receiver shall have all of the rights and powers necessary to fulfill the Receiver's obligations under this Order, specifically including, but not limited to, the power to retain the services of a locksmith in order to gain access to the Subject Property. The Receiver may also take any action reasonably necessary to protect and preserve the value of the Subject Property prior to sale, and to put the Subject Property into saleable condition, including making expenditures of funds that are first approved by the United States for reasonable and necessary maintenance and minor improvements. Any funds advanced by the Receiver, and previously approved by the United States, for any of the purposes of protecting or preserving the value of the Subject Property shall be reimbursed from the proceeds of the sale with priority over all liens or other claims unless paid from rents or forfeited earnest money deposits. The Receiver shall be permitted to add a lockbox to the Subject Property for other agents to show the Subject Property to prospective buyers (at the Receiver's own expense). The Receiver is authorized to advertise the Subject Property for sale in any manner determined by the Receiver's experience and business judgment. The Receiver is authorized to create a video of the interior as well as the exterior of the Subject Property for such purposes.

---

[3] When seeking to coordinate with or obtain the approval of the United States, the Receiver shall contact Lolita De Palma, Counsel for the United States, at 202-305-3664 or lolita.depalma@usdoj.gov. Defendant Polinder's Counsel, Jason Harn, can be contacted at 206-223-0800 or jharn@colvinhallettlaw.com.

ORDER - 31

1      3.      The Receiver shall set an initial listing price for the Subject Property, which

2    shall not be less than $546,010.[4]  The Subject Property shall not be listed or sold for an

3    amount less than $546,010, unless otherwise authorized by the United States.  In this

4    regard, the Receiver is authorized to use its business judgment to set a listing price or any

5    reductions in the listing price.  If the Receiver proposes to sell the Subject Property for

6    less than the tax assessed value, the Receiver shall inform the parties and, within three

7    business days of being so informed, any party that objects to the Receiver's proposed sale

8    price may file with the Court an objection to the proposed price, stating the basis for any

9    objection and why the Court should not defer to the Receiver's business judgment.  The

10   Court will then determine whether to approve of the sale price and may do so without a

11   hearing.

12     4.      Proceeds from the sale of the Subject Property are to be disbursed as

13   follows:

14     -     First, to the costs of the sale, including the compensation of the court-

15           appointed Receiver.  The Receiver shall be entitled to the payment of a

16           standard real estate commission for its services and costs incurred

17           pursuant to this Order.

---

[4] This is the tax assessed value of the Subject Property for 2023.  *See*
https://property.whatcomcounty.us/propertyaccess/Property.aspx?cid=0&year=2023&prop_id=92856.

ORDER - 32

1        -      Second, to the Whatcom County Treasurer for any unpaid property taxes

2               pursuant to the stipulation between the United States and the Whatcom

3               County Treasurer.  *See* docket no. 21.

4        -      Third, to the United States, for the amount of the federal tax liens against

5               Jane Polinder.

6        -      Fourth, to the United States, for the amount of the federal tax liens against

7               David Gould.

8        -      Fifth, to DSHS's lien for unpaid child support owed to Jane Polinder

9               pursuant to the stipulation between the United States and DSHS.  *See*

10              docket no. 126.

11        -      Finally, any funds remaining after the foregoing disbursements shall be

12               deposited with the Clerk of the Court and distributed pursuant to further

13               Court order.

14 The Subject Property shall not be sold before September 30, 2024.

15      5.     Counsel for the United States and the various defendants do not represent

16 the Receiver, but the Receiver may consult with counsel for the United States regarding

17 the Receiver's responsibilities if necessary.  The Receiver is not authorized to employ

18 counsel but may apply to the Court for authority to do so.  Counsel for the United States

19 may assist the Receiver in drafting any purchase agreement or related escrow documents

20 proposed and any final purchase agreement and related documents shall be provided to

21 Counsel for the United States at least 72 hours before closing.

22

23 ORDER - 33

...

6.      At closing, the purchase price may be used to pay closing costs customarily borne by sellers, as well as all real property taxes allocable to the period prior to closing.

7.      All persons occupying the Subject Property shall vacate the Subject Property at a time to be agreed upon by both the United States and the Receiver, with each occupant taking with them his or her personal property, but leaving all improvements and fixtures.  If any person fails or refuses to vacate the Subject Property, the United States shall seek an immediate court order authorizing the United States Marshals Service to take all actions that are reasonably necessary to have those persons removed.  Any personal property remaining on the Subject Property after the agreed to date to vacate shall be deemed forfeited and abandoned, and the Receiver is authorized to dispose of the personal property in any manner it sees fit, including sale, in which case the proceeds of the sale are to be applied first to the costs and expenses of sale and the balance shall be held in escrow in a manner consistent with private sales pending distribution pursuant to this Order.

8.      Defendants Gould and Polinder shall take no action that might reduce the value or marketability of the Subject Property nor cause or permit anyone else to do so.  Violation of this paragraph may be deemed a contempt of court.

9.      The Receiver's compensation shall be from the proceeds of the sale of the Subject Property in an amount not to exceed a normal and accustomed percentage of the gross sale proceeds.  The Receiver can agree to compensate a buyer's agent as appropriate.  If the Receiver or any other agent of the Receiver's company is also the buyer's agent, then the Receiver's commission shall be limited to a percentage of the

gross sale proceeds to be submitted for approval by the United States.  The Receiver shall also be reimbursed for its reasonable and necessary expenditures to protect and preserve the value of the Subject Property that were first approved by the United States in writing.

10.     The Receiver shall submit progress reports to the Court and the parties every ninety (90) days from the date of this Order until the Receiver is discharged.

ORDER - 35

# EXHIBIT B

ORDER - 36

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | [PROPOSED] |
| Plaintiff, | JUDGMENT IN A CIVIL CASE |
| v. | CASE NO. C16-1041 TSZ |
| DAVID GOULD, et al., | |
| Defendants. | |

\_\_\_\_ **Jury Verdict**. This action came before the court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

\_\_X\_\_ **Decision by Court**. This action came on for consideration before the court. The issues have been considered and a decision has been rendered.  THE COURT HAS ORDERED THAT

The Court having granted summary judgment against David Gould for unpaid federal income tax liabilities and civil penalties for 2000, 2001, 2002, 2003, and 2004, in the amount of $212,109.93 as of February 14, 2024, plus statutory interest pursuant to 28 U.S.C. § 1961(c) and 26 U.S.C. §§ 6601, 6621 and other statutory additions running from March 15, 2024, until paid in full; having granted stipulated judgment against Jane Polinder for unpaid federal income tax liabilities and civil penalties for 2000, 2001, 2002, 2003, and 2004, in the amount of $91,271.06 as of February 14, 2024, plus statutory interest pursuant to 28 U.S.C. § 1961(c) and 26 U.S.C. §§ 6601, 6621 and other statutory additions running from March 15, 2024, until paid in full; and having granted default judgment against Brookline Properties, Financial Concepts, Ltd., and Goldstar Enterprises, Inc.; now therefore, judgment is hereby ENTERED against David Gould in the amount $212,109.93, plus other statutory additions, and against Jane Polinder in the amount of $91,271.06, plus other statutory additions.

The United States holds valid federal tax liens against all property and rights to property belonging to David Gould and Jane Polinder, including, but not limited to, their rights to the Subject Property of this action, commonly referred to as 6109 Evergreen Way, Ferndale, Washington 98248 ("Subject Property") and legally described as:

> Lot 1, as delineated on Baycor Short Plat, according to the plat thereof, recorded August 22, 2005, under the Auditor's File No. 2050804879,

ORDER - 37

records of Whatcom County, Washington; situate in Whatcom County, Washington; Assessor's Tax Parcel No. 3902180470220000.

In light of the default judgments against them, any interests held by Brookline Properties, Financial Concepts, Ltd., and Goldstar Enterprises, Inc. in the Subject Property are hereby EXTINGUISHED.  This judgment does not affect any rights Goldstar Enterprises, Inc. or its successors or assigns might have in 6103 Evergreen Way and 2450 Thornton Road, Ferndale, Washington 98248.

The United States' federal tax liens against the Subject Property are foreclosed, and the Subject Property shall be sold pursuant to 26 U.S.C. § 7403 and 28 U.S.C. § 2001, with the proceeds to be disbursed as follows:

- First, to the costs of the sale, including the compensation of the court-appointed receiver.

- Second, to the Whatcom County Treasurer for any unpaid property taxes pursuant to the stipulation between the United States and the Whatcom County Treasurer.  *See* docket no. 21.

- Third, to the United States' federal tax liens against Jane Polinder.

- Fourth, to the United States' federal tax liens against David Gould.

- Fifth, to the DSHS's lien for unpaid child support owed to Jane Polinder pursuant to the stipulation between the United States and DSHS.  *See* docket no. 126.

- Finally, any funds remaining shall be deposited into the Registry of the Court.

The Subject Property shall not be sold before September 30, 2024.

ORDER - 38